(Not for Publication)                                                      (Doc. Nos. 1, 4, 8, 12, 14, 17)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ANTHONY LIONETTI, | : | |
|  | : | |
| Petitioner, | : | Civil No. 10-cv-4720 (RBK) |
|  | : | |
| v. | : | |
|  | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
|  | : | |
| Respondent. | : | |

**KUGLER**, United States District Judge:

      Currently before the Court is the motion of Petitioner Anthony Lionetti ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Respondent United States of America ("Government") submitted an Answer in response to the motion. The Court has considered the parties' submissions, and for the reasons set forth below, concludes that Petitioner's motion must be denied.[1]

---

[1] 28 U.S.C. § 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto . . . ." Based on the reasons discussed herein, the Court hereby denies Petitioner's request for an evidentiary hearing, finding that the record in this case conclusively shows that Petitioner is not entitled to relief under 28 U.S.C. § 2255.

I.     **BACKGROUND**

This Section 2255 petition arises out of Petitioner's conviction for income tax evasion. On April 26, 2005, Petitioner was indicted by a federal grand jury on charges of conspiracy, personal tax evasion, and willful failure to pay employment taxes for Petitioner's two businesses. On October 12, 2006, Petitioner was convicted of three counts of income tax evasion relating to his personal income taxes, and acquitted of the other counts relating to employment tax evasion for Petitioner's businesses. On May 31, 2007, Petitioner was sentenced to serve 41 months in prison, three years of supervised release, and to pay $246,791 in restitution as a condition of supervised release. On June 14, 2007, Petitioner filed a motion to stay the sentence of imprisonment pending appeal, which was granted.

On August 31, 2007, through the same counsel as had represented Petitioner during the trial, Petitioner appealed to the United States Court of Appeals for the Third Circuit on five sentencing issues. On November 12, 2008, the Third Circuit affirmed both the conviction and sentence of Petitioner.

Petitioner subsequently obtained new counsel. On December 17, 2008, Petitioner through his new counsel filed a petition for rehearing with the Third Circuit. In his petition for rehearing, Petitioner claimed that this Court erred in including employment tax loss as relevant conduct for sentencing purposes because this Court had only found Petitioner criminally liable for personal tax evasion and not employment tax evasion. See 2255 Motion, Ex. 2, 24-31. Petitioner also claimed that this Court erred by ordering restitution as a part of the sentence, when this Court should have ordered restitution as a condition of release. Id. at 31-35. On January 8, 2009, the Third Circuit denied the petition for rehearing. On March 20, 2009, Petitioner's bail was revoked and he was remanded to jail.

On June 8, 2009, Petitioner filed a petition for a writ of certiorari to the United States Supreme Court, raising the same issues as were raised in the petition for rehearing. The Supreme Court denied the petition on October 5, 2009.

On October 12, 2009, Petitioner filed a motion for a new trial based on allegedly newly discovered evidence. This Court denied Petitioner's motion on October 29, 2009.

On September 15, 2010, Petitioner filed the present pro se Petition to vacate, set aside, or correct Petitioner's sentence pursuant to 28 U.S.C. § 2255. All parties having briefed the matter, the Petition is now ripe for review.

II. **STANDARD**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move before the court that imposed the sentence to vacate, set aside, or correct the sentence if it were imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" To establish a right to habeas corpus relief, a petitioner must demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989). Section 2255 is the preferred method for advancing an ineffective assistance of counsel claim. U.S. v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). A petitioner is entitled to a hearing to determine issues of fact and to make conclusions of law, unless the files and records of the case "conclusively show" that the petitioner is entitled to no relief. 28 U.S.C. § 2255(b).

III.     **DISCUSSION**

Petitioner argues that he was denied effective assistance of counsel because 1) his trial counsel failed to move to dismiss the charges against Petitioner due to violations of Petitioner's Speedy Trial Act rights; 2) trial counsel failed to allow Petitioner to participate in the voir dire process; 3) due to ineffective assistance of counsel, the trial court committed several sentencing errors; 4) trial counsel failed to object to the sentencing errors alleged in the third claim; and 5) appellate counsel failed to object to the sentencing errors alleged in the third claim. Pet. br. at 8-18. The Government challenges each of these arguments. The Court finds the Government's positions on each claim to be compelling, and accordingly denies the Petition.

A.     **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a party must establish 1) deficiency of counsel's performance and 2) prejudice caused by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Only the most serious errors constitute deficient performance. Id. (describing errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"). Prejudice exists only when the defendant is denied a fair trial capable of producing a reliable result. Id.

The first Strickland prong is an objective standard of "reasonableness under prevailing professional norms." Id. at 688. The Constitution requires a fair trial, not some higher quality of legal representation. See id. at 688-89. Thus, the standard is "highly deferential" and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second Strickland prong is a subjective, totality-of-the-circumstances analysis of whether counsel's conduct "actually had an adverse effect on the defense." Id. at 693. A

4

speculative or hypothetical effect is not enough. Id. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1. **Petitioner's Counsel Was Not Ineffective for Failing to Move to Dismiss**

Petitioner argues that his trial counsel should have moved to dismiss the charges against Petitioner based on statutory and constitutional speedy trial right violations. Pet. br. at 8-9. The Government responds that Petitioner's counsel could not have moved to dismiss the charges against Petitioner based on speedy trial right violations, because Petitioner's counsel himself requested the three exclusions of time under the Speedy Trial Act in order to prepare an effective defense for Petitioner. Resp. br. at 7-9.

The Court finds Petitioner's position untenable. Petitioner's counsel's argument that he needed more time to prepare an effective defense was based on counsel's need to review over 12,000 pages of documents in a complex tax evasion case. See Resp. Ex. E, Poplar Aff. Furthermore, the Government notes that Petitioner's counsel persuasively argued for a third continuance over the objection of the United States. Resp. br. at 7.

The Court agrees with the Government that Petitioner's counsel's request for an extension of time is precisely the type of request envisioned under 18 U.S.C. § 3161(h)(7)(B)(iv). Petitioner consented to the exclusions of time under the Speedy Trial Act in order for his counsel to prepare an effective defense for Petitioner. As the Government notes, any motion to dismiss by Petitioner could well have been barred by judicial estoppel. Resp. br. at 9 n.3 (citing Zedner v. United States, 547 U.S. 489, 504 (2006)). Furthermore, had Petitioner's request for an extension

of time not been granted, Petitioner could have forcefully argued that Petitioner was not given adequate time to prepare an effective defense. It is disingenuous for Petitioner to argue first that he needed more time to prepare an effective defense, and then, after the objection of the Government, having Petitioner's request for an extension of time granted, to argue that Petitioner's right to a speedy trial was violated. Thus, the Court denies Petitioner's first claim of ineffective assistance of counsel.

2. **Petitioner's Counsel Was Not Ineffective During Voir Dire**

Petitioner further asserts that his counsel was ineffective for failing to allow Petitioner to participate in the voir dire process. Pet. br. at 14-15. Specifically, Petitioner insists that his counsel's "categorical[] reject[ion]" of Petitioner's request to participate in the voir dire process by examining juror questionnaires and helping to exercise peremptory strikes severely prejudiced Petitioner. Id. at 14. Petitioner has not explained how his lack of involvement in the voir dire process would have probably changed the result of the trial. Instead, Petitioner merely states that his counsel's decisions during voir dire were "based on . . . caprice or incompetence." Id. at 15. Such speculative and conclusory allegations must be dismissed.

Even assuming, arguendo, that Petitioner's involvement in the voir dire process would have provided some benefit to Petitioner, it is important to remember that Petitioner is entitled to "effective" assistance of counsel, not the best assistance or even mistake-free assistance. See U.S. v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006). A counsel's failure to make every objection, or even making the wrong objection, is not grounds for retrial. See Shaw v. Campbell, No. 05-1506, 2008 WL 744731, at *10-11 (E.D. Cal. Mar. 18, 2008), report & rec. adopted by No. 05-1506, 2008 WL 2225622 (E.D. Cal. May 28, 2008). Accordingly, the Court finds that Petitioner

has failed to satisfy either Strickland prong.  The Court therefore denies Petitioner's second claim of ineffective assistance of counsel.

### 3. Alleged Sentencing Errors

Petitioner next asserts that this Court erred at sentencing in three ways.  First, Petitioner argues that it was error for this Court to consider "relevant conduct" beyond April 15, 2002 in calculating Petitioner's sentence.  Pet. br. at 15.  Second, Petitioner argues that it was error to apply the civil tax statute to determine whether Petitioner was criminally liable for the nonpayment of corporate employment taxes, and thereby to include civil relevant conduct to enhance his sentence.  Id. at 16.  Third, Petitioner argues that it was error for this Court to impose the restitution as part of the sentence.  Id. at 17.  The Government points out that the latter two issues were raised in the petition for rehearing before the Third Circuit and in the petition for writ of certiorari, both of which were denied.  Resp. br. at 10.  Furthermore, the government argues that this Court did not err in sentencing in any of the ways claimed by Petitioner.  The Court concurs and will address each of Petitioner's arguments in turn.

Regarding the first alleged sentencing error, Petitioner argues that his latest offense of conviction for evasion of personal income taxes was complete on April 15, 2002, and that therefore this Court should not have included as relevant conduct the failure to pay employment taxes of approximately $1.6 million for 2002, 2003, 2004, and the first three quarters of 2005. See Pet. br. at 15.[2]

The United States Supreme Court held that a sentencing court can consider "conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. 148, 154 (1997); see also Grier, 475 F.3d at 585 ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been

---

[2] Defendant states that including this relevant conduct increased the base offense level from 18 to 22.  Pet. br. at 15.

7

prove[n] by a preponderance of the evidence."). Further, the commentary to U.S.S.G. § 1B1.3 states that there are three factors to consider when determining whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct. These factors "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 comment, 9(b).

This Court previously held that the Government had proved, by a preponderance of the evidence, that Petitioner failed to report and pay employment taxes during the commission of the offenses for which the jury convicted Petitioner. See Docket No. 05-cr-310. To support this argument, the Government stated that Petitioner's failure to pay payroll taxes and personal income taxes were temporally related. Moreover, the Government points to evidence presented at trial that Petitioner and his business manager used corporate funds for "unnecessary and extravagant expenditures," such as leases on luxury vehicles, which the Government contends goes to the willful nature of Petitioner's actions in failing to remit payroll taxes to the IRS.

Petitioner continues to rely on his acquittal of the payroll tax count to contest the inclusion of "relevant conduct" beyond April 15, 2002. Because the payroll and personal tax evasion occurred concurrently, the Court properly included this conduct in its prior sentence determination. Moreover, the offenses are unquestionably similar. Pursuant to U.S.S.G. § 2T1.1,[3] the Government presented sufficient evidence at trial to demonstrate that it is more likely than not that Petitioner willfully failed to pay over payroll-related taxes to the IRS concurrent

---

[3] "In determining the total tax loss attributable to the offense (see § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated. The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant; (b) the defendant uses a consistent method to evade or camouflage income, e.g., backdating documents or using offshore accounts; (c) the violations involve the same or a related series of transactions; (d) the violation in each instance involves a false or inflated claim of a similar deduction or credit; and (e) the violation in each instance involves a failure to report or an understatement of a specific source of income . . . ." Application Note 2 of U.S.S.G. § 2T1.1.

with his failure to pay over personal income taxes, thereby warranting the former's inclusion in the total loss attributable to Petitioner. See Resp. Ex. G, Sentencing Trans., at 20-22.

Petitioner next claims as sentencing error that this Court used an improper civil standard to determine that Petitioner was criminally liable for corporate tax evasion. Specifically, Petitioner argues that this Court did not apply the 26 U.S.C. § 7343 criminal standard to determine that Petitioner was "individually, criminally liable" for corporate tax evasion. Instead, Petitioner asserts that this Court used the 26 U.S.C. § 6671 civil standard to determine that Petitioner was individually, criminally liable. See Pet. br. at 16. However, the Court finds that both the civil and criminal Internal Revenue Code statutes define "person" using identical language. Compare 26 U.S.C. § 7343 with 26 U.S.C. § 6671; see United States v. Thayer, 201 F.3d 214, 218 (holding that "Thayer, as the president and majority owner of [two businesses] was properly charged and convicted as a 'person' under [26 U.S.C.] § 7202"). The Court therefore finds that the proper criminal standard was used in determining whether Petitioner was a "person" required to pay employment taxes for his two businesses. Accordingly, this Court did not err in finding that Petitioner, as president and owner of his two businesses, willfully failed to pay employment taxes owed by these businesses to the IRS.

Regarding the third alleged sentencing error raised by Petitioner, this Court finds that the order for Petitioner to pay restitution for unpaid taxes was not error. District courts have discretion to order restitution to the government as a "condition[] of a sentence of probation." See 18 U.S.C. § 3563(b)(2). The current statutory scheme allows for restitution to be imposed as a condition of supervised release in a criminal tax case, where the restitution is limited to losses resulting from the crime of conviction. U.S. v. Nolen, 523 F.3d 331, 333 (5th Cir. 2008). During his sentencing hearing, Petitioner acknowledged that "the actual amount of tax due on

[Petitioner's] personal income taxes [wa]s [$]246,791." Def. Ex. G, Sentencing Hrg. Trans. at 4. This Court granted the government's request to impose restitution upon Petitioner for these unpaid taxes as a condition of supervised release. See id. at 60. Therefore, this Court finds no error in the prior imposition of restitution upon Petitioner as a condition of Petitioner's supervised release.

### 4. **Petitioner's Trial Counsel Was Not Ineffective During Sentencing**

Petitioner next claims that his trial counsel's failure to object at sentencing to the three alleged sentencing errors discussed above constitute ineffective assistance of counsel. Pet. br. at 18. It is not possible for Petitioner to show either deficiency or prejudice as to this claim. As discussed above, Petitioner's allegations of sentencing error are without legal merit. See discussion supra Part III.A.3. Petitioner could not have suffered any prejudice resulting from his counsel's failure to raise an objection that inherently lacks merit. Therefore, Petitioner's fourth claim must be dismissed.

### 5. **Petitioner's Appellate Counsel Was Not Ineffective on Direct Appeal**

Petitioner's final claim of error turns to the performance of his appellate counsel. Petitioner argues that his appellate counsel was ineffective for failing to appeal the Court's alleged sentencing errors. Pet. br. at 18. As noted above, Petitioner's counsel on direct appeal was the same experienced counsel who had effectively represented Petitioner throughout his criminal trial and during Petitioner's sentencing hearing. Petitioner's counsel had no duty to raise meritless arguments on direct appeal, and Petitioner could not have suffered prejudice from the same. Therefore, the Court dismisses Petitioner's fifth claim for ineffective assistance of counsel.

B.  **Certificate of Appealability**

Finally, the Court assesses whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Local Appellate Rules for the Third Circuit state:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue . . . . If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

L. App. R. 22.2.

A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Petitioner's claims here are based on a purported denial of his Sixth Amendment right to effective counsel. Based on the analysis above, the Court finds that Petitioner's claims are without merit. Reasonable jurists would agree that in each of Petitioner's claims of error, he either did not show that his counsel's actions were unreasonable or he did not show that he suffered any prejudice. Therefore, the Court shall not issue a certificate of appealability.

11

IV. **CONCLUSION**

      For the foregoing reasons, the Petition is **DENIED**. The Court **SHALL NOT ISSUE** a certificate of appealability. An appropriate Order shall follow.


Date: 11/18/2011                                 /s/ Robert B. Kugler
                                                                                      ROBERT B. KUGLER
                                                                                      United States District Judge